## HOLLEMAN & SON *v.* BRADLEY FERTILIZER CO.

1. A. and B. enter into a written contract, whereby it is stipulated that A. shall furnish B. a given quantity of fertilizers at a certain price per ton; that B. shall make a complete statement of the list of purchasers of the fertilizers from him, shall furnish such list to A. by a given time, and shall settle for all such sales by giving his individual note or notes to A.; that the cash, notes, and other obligations received by B. in payment for the goods sold by him are to be held in trust for A., and forwarded to him at a given date to secure B.'s individual notes, and all such like notes and other obligations received by B. from purchasers to be guaranteed by him, and if returned to him for collection, are, with the proceeds, to be at all times the property of A. until B.'s individual note or notes are paid in full; that the individual note or notes of B. to A. shall be met at maturity, and their prompt payment shall not depend upon the collection of the

notes and accounts of the persons who have purchased the fertilizers from B.; and that said fertilizers, until sold, are the property of A., and any part thereof unsold on a given date is to be subject to his order. *Held*, that this contract creates between the parties a del credere agency, and that the title to the fertilizers does not pass to B. upon their delivery to him by A., but remains in A., the principal, until sold by B., the agent.

2. In a suit by such principal against his agent for money collected by the latter as the proceeds of sales he has made of the principal's goods, the agent can not set up as a defense to the action the fact that when he sold the fertilizers to third parties the same had not been inspected, analyzed, tagged or branded, as required by law.

3. Alleged error in overruling a demurrer to an amendment filed to a petition can not be made the subject-matter of review in a motion for a new trial.

4. The above covers all the grounds of error complained of, which were insisted on by plaintiff in error before this court. All exceptions in the record, not mentioned either in the brief or argument of counsel for plaintiff in error, will be considered by this court as being abandoned.

Submitted October 21, — Decided December 14, 1898.

Complaint.    Before Judge Butt.    Taylor superior court. April 12, 1898.

The Bradley Fertilizer Company sued G. T. Holleman & Son, for $594 principal, besides interest, alleged to be due upon a promissory note of the defendants, payable to the plaintiff, for $1,164, dated April 30, 1888, and due November 15 after date. On February 24, 1892, the plaintiff amended the declaration by alleging: Defendants are indebted to the plaintiff $594, together with interest on that amount from January 25, 1889, for that on or about March 13, 1888, the plaintiff contracted with the defendants to supply them with a limited quantity of fertilizers for sale by defendants during the season of 1887–88. Under this contract, the plaintiff was to deliver the same f. o. b. cars at Butler, Ga., to be sold by the defendants at a price not less than $26 per ton of 2,000 pounds net to plaintiff, the fertilizers, until sold, to be the property of plaintiff, and subject to plaintiff's order. In consideration of an additional commission, to wit, whatever sum defendants might derive from the sale of the fertilizers above $26 per ton of 2,000 pounds, to be paid over by defendants to plaintiff, defendants undertook and promised to warrant and secure the payment of $26 per. ton of 2,000 pounds on all sales of the fertilizers by the defendants, at a date not later than November 15, 1888, and to that

end executed the note sued on, and agreed that the specific cash, checks, notes, liens, and other obligations received from time to time by defendants should be received and held in trust for plaintiff to secure the payment of said note. Plaintiff, relying upon the various promises and undertakings of defendants herein set out, as well also as others contained in said' contract, which is now exhibited in court, intrusted the fertilizers from time to time to defendants, to be sold by defendants on account of plaintiff. Plaintiff has fully complied with, its contract, and defendants received the fertilizers and sold and otherwise disposed of the same. Defendants have collected and received, from the sales by them of fertilizers, $1,164, or other large sum, and have paid over and accounted to plaintiff but for the sum of $570, which amount has been credited upon the note given by defendants to plaintiff to secure the payment of the sales made by defendants by the expiration of the time of credit in said contract, November 15, 1888. Wherefore plaintiff prays that defendants be required to account for the balance of said sales of fertilizers. Further, defendants are indebted to plaintiff $594, besides interest, on an account due November 15, 1888.

The defendants pleaded, among other things, that the consideration for which the plaintiff sued was guano which was not tagged and branded as the law directs. The trial resulted in a verdict against the defendants for $461.75. They moved for a new trial on several grounds; and to the judgment overruling their motion they excepted. For the other facts see the opinion.

*W. S. Wallace, W. P. Edwards, R. D. Smith* and *J. Y. Allen*, for plaintiffs in error. *C. C. West, O. M. Colbert, J. H. Worrill* and *Brannon, Hatcher & Martin*, contra.

LEWIS, J. The following is the written contract declared upon by plaintiff below in its amended petition, and which was introduced on the trial of the case:

"Bradley Fertilizer Company, Boston, Mass.

"This agreement made this 13th day of March, 1888, between Bradley Fertilizer Company of Boston, Mass., and G. T. Holleman & Son of Lamar's Mill, Upson Co., Ga., witnesseth,

that said Bradley Fertilizer Company hereby agrees to supply said G. T. Holleman & Son with a limited quantity of fertilizer for sale by them during the season of 1887 and 1888, upon following terms and conditions: The fertilizers to be delivered F. O. B. cars at Butler, Ga., viz.: 12 tons Sea Fowl Guano at 26 dollars per ton 2,000 lbs., which price is to be net to the Bradley Fertilizer Co., exclusive of all charges and commissions. A complete statement of the season's sales with a list of the purchaser's names in full is to be furnished said Bradley Fertilizer Co. by said G. T. Holleman & Son, not later than May 1, 1888. Settlement is to be made on or before May 1, 1888, for all said fertilizer sold to date of settlement by said G. T. Holleman & Son, by note or notes of said G. T. Holleman & Son maturing not later than November 15, 1888, and payable at Macon, Ga., without any expense whatever of remittance to said Bradley Fertilizer Company. The specific cash, checks, notes, liens, and other obligations received from time to time by said G. T. Holleman & Son in payment for or on account of said goods sold by them are to be so     and held in trust for the Bradley Fertilizer Co. and forwarded to said Company not later than May 1st, 1888, to secure the payment of note or notes of said G. T. Holleman & Son. All checks, notes, liens, and other obligations so received are to be guaranteed by said G. T. Holleman & Son, and, if returned to or left with them for collection, are, with the proceeds, to be at all times the property of the Bradley Fertilizer Company, until the note or notes of said G. T. Holleman & Son are paid in full. Said notes of G. T. Holleman & Son must be met at maturity, and their prompt payment must not depend upon the collections of the notes or accounts of the persons who have purchased said fertilizer. Said fertilizers until sold are the property of the Bradley Fertilizer Co., and any part thereof unsold on May 1st next is to be subject to their order, but the said G. T. Holleman & Son hereby agree to keep them well sheltered and to hold the same free of all charges and storages.            [Signed]    Bradley Fertilizer Company,
by F. M. Johnson, Jr., Agent.
G. T. Holleman & Son, Lamar's Mills, Ga.
Shipping Point, Butler, Ga.

"Subject to approval of home office.

36 tons to date, Mch. 21, 1887.

Freight from Pensacola, per ton, $4.44."

1. In several of the grounds of the motion for a new trial, error is assigned on the construction of the above contract given by the judge in his charge to the jury.    On this point the court charged the jury that the contract meant that Holleman & Son were the agents of the Bradley Fertilizer Company; that the contract constituted Holleman & Son agents of the company to sell a certain specific amount of guano at a certain specified price, and that, under and by virtue of the terms of that contract, title never passed out of the Bradley Fertilizer Company until it was disposed of by their agents to the consumers.    Counsel for plaintiffs in error contend that this was an erroneous construction of the contract; that the stipulations entered into between the parties constituted Holleman & Son purchasers of the goods from the company, and that therefore, when the goods were delivered to them, title passed out of the company and vested in them.    We think the court was right in its ruling upon the subject.    Manifestly, under the terms of the contract, Holleman & Son were under no obligation to the company, and had incurred no liability, until they had made sale of the goods to third parties; and, until this sale was made, the title to the property remained in the company.    If there were any doubt about what the real intention of the parties was, under the terms of the contract, down to the last sentence, that sentence clearly removes all ambiguity in stipulating that "Said fertilizers until sold are the property of the Bradley Fertilizer Company, and any part thereof unsold on May 1st next is to be subject to their order."    The case of *Snelling* v. *Arbuckle*, 104 *Ga.* 362, is cited by counsel for plaintiff in error to sustain their contention.    By a comparison of the contract in that case with the one now under consideration a very marked difference will appear.    It appears there that the consignee of the goods not only guaranteed the sale of each consignment, but agreed to pay for the goods at a definite time named, regardless of the fact whether he had made any sale thereof or not.    Other distinctions could be drawn, but this one

is quite sufficient to show that the case above cited has no application to the issue in the record before us.

2. In the motion for new trial error is alleged in the charge of the court, to the effect that if Holleman & Son, by reason of the fact that they had sold the guano, and parties had refused to pay for it on the ground that it was not tagged and branded, had turned over the notes they had received with all the cash they had received thereon, and had made an effort to collect the same, and had failed to do so because the guano was not tagged and branded, the company would only be entitled to a judgment against them for the amount actually collected, and if Holleman & Son turned the notes over to the company that they had failed to collect for this reason, then Holleman & Son would have been discharged ; but if they took these notes and collected them and took the money and kept it, then the company would be entitled to a judgment against them for whatever amount may have been retained in their hands unaccounted for to the company.    And, in refusing to charge, as requested, that "No rights can arise to either party out of an agency created for an illegal purpose; and for a principal to furnish his agent guano to be sold in Georgia, which has not been inspected, branded or tagged, is to furnish the same for an illegal purpose, and the courts will not help or aid either party in a suit by either against the other respecting the liabilities of either to the other growing out of said contract."    It was contended by counsel for plaintiffs in error, that even if the relation of principal and agent existed between the parties, this agency was created for an illegal purpose, that both are at fault, and the courts will not help either in a suit by one against the other, based upon such an illegal contract.    The reply to this contention is, that this suit was not based upon an illegal contract, nor was it an effort to enforce a contract executed for an illegal purpose.    There is nothing upon the face of the contract itself to indicate that it was the purpose of the company to have the agents sell its fertilizers in violation of the law requiring an inspection, branding and tagging of the same.    There is nothing in the testimony outside of the contract to indicate such a purpose.    On the contrary it was shown that there was

simply an omission to tag and brand a portion of the fertilizers shipped by the company to its consignees, and the company afterwards telegraphed to them to hold these goods that were not branded until the same could be inspected and tagged, etc. It happened that the telegram was received too late as to some of the goods which had been sold to farmers by the agents. Was it not the duty of the agents themselves, when they saw the statute had not been complied with as to some of the fertilizers, either to have had the fertilizers tagged, etc., or to have informed their principal of the omission, and not to have sold the goods in violation of the law? We infer from the record that it was evidently not the purpose of the company to ignore the statute, and its violation was really the act of their agents. They were at least particeps criminis; and ordinarily in such cases agents will not be heard to set up their own wrong and illegal conduct in violating the law, as a defense to an action for money they have actually collected for their principal. There was evidently no violation of the statute upon delivery of the goods to these agents by their principal; for, as before seen, this was not a sale. Besides, the record shows the company was located in Boston, Mass.; and the inference is, the fertilizers were shipped from there to Georgia. The goods could not have been properly inspected and tagged till they reached this State. *Hammond* v. *Wilcher*, 79 *Ga.* 421. It follows, therefore, that there was no violation of the law, before the goods reached the agents; and they were really the violators of the statute, by making sale of goods before the law had been complied with. It appears from the testimony that some of the purchasers of this guano were introduced as witnesses, who testified that the same was not tagged or branded, but who nevertheless waived any defense they might have had growing out of this fact, and voluntarily paid the purchase-price of the goods to these agents. The purchasers had a right to make this waiver. They had the right, in spite of the violation of the law, to have paid the money, and when such a payment is made voluntarily, and without protest or compulsion, it could not be recovered back even by the purchaser without some special statute authorizing its recovery. When the money

went into the hands of the agents, it was manifestly not their property. It had ceased to be the property of the purchaser, and it necessarily follows that it belonged to the principal.

In the case of *Ingram* v. *Mitchell*, 30 *Ga.* 547, it was decided: "Where an agent receives money for his principal upon an illegal contract, he can not avail himself of that defense in an action brought against him by the principal for money had and received to the plaintiff's use, especially when those who paid over the money to the agent do not desire that he should retain it. When money is actually paid over upon an illegal contract, it is clear that it can not be recovered back, the contract being executed, and both parties being in pari delicto. A party may, in some cases, be allowed to retain money which was due to him ex equo et bono, but which he could not have recovered at law; yet he never can be allowed to retain money to which he has no claim whatever against the true owner." This decision was based upon the sale of a negro slave, made by an agent for the owner for the purpose of saving the slave's life then endangered by a charge against him of a capital offense. The object of the sale was evidently illegal; yet the agent, having actually sold the slave and received money for the principal, was held liable. See authorities cited in the opinion, collected by Lumpkin, J. This case is cited approvingly in *Clarke* v. *Brown*, 77 *Ga.* 610. In that case Chief Justice Jackson, delivering the opinion, says: "The agents can not set up the illegal contract, because they made it and got a consideration for using the money illegally, and are particeps criminis. Just as if it had been necessary for the plaintiff—the principal—to use the illegal contract to recover the money, which would have been necessary had he sued for the profits of the venture, so it is illegal for the agents to use it to defend the suit for money they have belonging to the principal." The case in 30 *Ga.*, cited above, is much stronger than the one at bar, for invoking an illegal contract as a defense to an action. For in this case the illegal contract was made by the agents themselves who set it up as a defense, besides being fully executed by the purchasers paying to the agents the money agreed on in the illegal contract. This money the agents held in trust for their principal.

If the contention of plaintiffs in error be correct, then it would lead to results revolting to reason, and shocking to every sense of justice.    If an agent can thus defend a suit for money so collected by him for his principal, it would follow that had the claims against the purchasers of this fertilizer been put in the hands of an attorney at law, and they had voluntarily paid him, waiving their defense growing out of a violation of the statute by the creditor, such attorney could pocket the money, appropriate it to his own use, and defend an action therefor by replying to his client, "You have made an illegal contract, and though I have collected the money on it for you, I am released under the law from my obligation to pay it to you." The charge of the court complained of in this case restricted the finding of the jury to such amounts as the testimony showed these agents had actually received for the sale of the goods.    We think it quite as fair to the plaintiffs in error as could reasonably have been expected, and if any error was committed, it was prejudicial to the Bradley Fertilizer Company.

3. Another ground in the motion for a new trial is alleged error of the court in overruling defendants motion to strike plaintiff's amendment to the petition, declaring on the contract, and seeking to hold defendants liable to them under the contract as agents del credere, on the ground that the amendment made a different and new cause of action and new parties, or sought to make them liable in a different capacity from that set out in the original cause of action.    Although this was called a "motion to dismiss the amendment," it was, properly speaking, a demurrer to the amendment.    There were no exceptions pendente lite filed to the judgment of the court overruling this demurrer, nor were any exceptions specifically taken thereto in the writ of error to this court.    Under well-established rules of this court, such a question is not a subject-matter of review in a motion for a new trial.    *Shuman* v. *Smith,* 100 *Ga.* 415.    The rule in regard to demurrers to original petitions would apply with equal force to such objections when raised to an amendment to a petition.

4. The above deals with most of the various grounds in the amended motion for a new trial, and covers all the points argued

or presented to this court for review by counsel for plaintiffs in error. We therefore, according to previous rulings of this court, treat the silence of the attorneys for plaintiffs in error on other questions made in the record as an abandonment of these grounds in their motion. Such a construction is particularly applicable to this case; for, upon an examination of the remaining grounds of the motion, we think they are void of all merit. The principles decided in the first two headnotes are really upon the controlling issues in the case.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., disqualified, and Little, J., absent.*