2834. HOPKINS & COMPANY *v.* ARMOUR & COMPANY.

The custom and usage of a business may be proved, to illustrate the authority of an agent. There being conflict in the evidence as to the authority of the agent and dispute between the parties as to whether the agent had the authority to sell, or merely power to take orders subject to the confirmation of its principal, it was error to direct a verdict.

DECIDED NOVEMBER 29, 1910.

Complaint—appeal; from McIntosh superior court—Judge Conyers presiding. July 2, 1910.

*C. M. Tyson,* for plaintiff in error.   *W. deR. Barclay,* contra.

RUSSELL, J.  Armour & Co. brought a suit against R. K. Hopkins & Co. on an account for lard.  Hopkins & Co. by a plea attempted to set off the difference in price between certain lard they claimed to have purchased from Armour & Co., but which was not delivered, and lard they were compelled to purchase at a higher price to replace that which Armour & Co. had contracted to furnish them, having tendered the difference and making a continuous tender thereof.  The testimony for the plaintiff was to the effect that the salesman had no authority to do more than to take orders which were thereafter to be accepted or declined by Armour & Co.  It appears that the defendant did not dispute the correctness of the account upon which the suit was based.  At a previous time Hopkins & Co. had given an order to a salesman of the plaintiff, a Mr. Snow, for five tierces (1800 pounds) of lard compound at the price of 7⅞ cents per pound. Snow's taking the order prevented Hopkins & Co. from purchasing it from another salesman, who was trying at the same time to sell to them.  Armour & Co. failed to ship the 1800 pounds of lard as purchased by Hopkins, and he was compelled to buy at 10¼ cents per pound, and claimed that Armour & Co. owed him the difference, $42.75.  In opposition to this claim of the defendant, the plaintiff, as already stated, set up that the salesman was without authority to make the sale.  The defendant R. K. Hopkins testified as to a number of purchases from the plaintiff, and that he did not buy, either the previous goods or those which are the subject-matter of the present suit, subject to confirmation; that it was not the custom to give orders to the salesman and have them confirmed by the house; that they were never confirmed by the house; that he had never had any notice that orders of plaintiff's salesman had to be confirmed.  It is apparent, from this brief summary of the evidence, that there was sharp conflict in the testimony upon the point of the agent's authority, the plaintiff contending that Mr. Snow was only a special agent, while the contention of Hopkins & Co. was that he was an agent with general authority to sell.  The court directed a verdict in favor of the plaintiff.  We think this was error, because the question of fact involved and relating to the powers of the agent should have been submitted to the jury.

The counsel for defendants in error cite the case of *Cable Co.* v. *Hancock,* 2 *Ga. App.* 74 (58 S. E. 319), but the case at bar is easily distinguishable from that case, because in that case the contract expressly declared that it was made subject to confirmation. As held in that case, the general extent of the implied power of a salesman is that he is to take orders subject to being confirmed by his principal, but the testimony of the defendant Hopkins in this case was that he purchased the goods outright, and that that had been the custom of dealing between himself and Armour & Company. While the special agent can only act within the scope of the authority expressly delegated to him, one can have a general agent for the purpose of making sales, and the testimony of the defendant would have authorized that conclusion in this case. Private instructions or limitations not known to persons dealing with an agent who assumes to act within the approved scope of his authority can not affect them. Civil Code of 1895, § 3023. Mr. Hopkins testified in the present case that he had always theretofore purchased from the agent, and that there was no need for confirmation. He testified that this was the custom of these dealers. Although it may have seemed incredible to the court, it was not for the court, but for the jury, to determine the truth of the matter. A general agent may bind his principal with respect to all matters within the apparent scope of his authority. According to Hopkins' testimony, and judging by the past transactions between the parties, it was apparently within the scope of Snow's authority to sell the lard, and the duty of the plaintiffs to furnish it in accordance with this contract. It would never do to hold that one could not appoint an agent with authority to sell goods, without the necessity of having the bargain confirmed, even though the latter method of sale is the more usual. It is apparent that the defendant in the present case was of the opinion that the salesman had authority to sell. He could have bought the lard compound from another salesman who was at the time in his store, endeavoring to sell to him, if Armour & Co.'s salesman had not induced him to buy from them. To say that in no case could a merchant authorize his salesman to make a binding trade in his behalf would paralyze business, because the buyer would never know whether he could rely upon having the goods he contracted for shipped or not, and, there-

fore, know that his stock would be seasonably replenished. According to the testimony of Mr. Hopkins, the inference that Mr. Snow had authority to bind Armour & Co. by the proposal which Hopkins accepted is authorized; and it was for the jury to say whether they would prefer Hopkins' testimony or that of the witness for the plaintiff. In *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (50 S. E. 1000), special attention is called to the fact that the principal will not be bound by the acts of his agent beyond the scope of his authority, where the person dealing with the agent had notice of such limitation. The converse of this proposition is likewise true, that where the person dealing with an agent has no notice of limitations, and the agent has apparent general authority to do such acts, the principal will be bound. Likewise, the importance of the proof of custom in such cases is to be taken into account, as is pointed out in *Lauchheimer* v. *Jacobs,* 126 *Ga.* 261 (55 S. E. 55). In that case Justice Atkinson quotes with approval from Clark & Skyles on the Law of Agency, § 69, as follows: "Proof of the custom and usage in a particular business can not be sufficient, without anything more, to show that the relation of principal and agent exists, but such proof may be material, when the fact of agency is otherwise proved, or admitted, to show what the contract of agency was, and to show the extent of the agent's authority. When the rights, duties, and liabilities as between an acknowledged agent and his principal are in question, or when the authority of an acknowledged agent to do a particular act or make a particular contract is in question, an established custom or usage in the particular business or place may be proved and taken into consideration, either for the purpose of construing the contract of agency as between the parties, or for the purpose of determining the extent of the agent's authority; for, unless expressly excluded, such a custom or usage enters into a contract of agency, as it does into other contracts, and also enters into the authority of the agent as respects persons dealing with him. Of course, as between the parties themselves, and as against persons with notice, the principal may, by his instructions to the agent, exclude customs and usages, however well established. But such secret instructions can not be set up against persons dealing with the agent without notice of them; for they have a right to assume, in the absence of notice to the contrary, that the agent's authority is

in accordance with established customs and usages." In *Bass* v. *Granite City Co.,* 119 *Ga.* 126 (45 S. E. 981), Justice Lamar, in discussing the powers of the agent in that case, which was a case of a special agency, says: "But even if it be treated as creating a special agency to sell particular goods to a particular person, the purchaser was only required to examine his authority. This the purchasers did when they read the letter. They were not bound by private instructions not included in the writing, but were justified in assuming that he could fix the price, that being an essential element in the contract of sale. While a general agent has broader powers than one selected to do a particular act, the authority in both cases must be construed to include all necessary and usual means for effectually executing it. Where one is appointed to sell a particular article to a particular person, this confers on the special agent authority to agree on the price—otherwise the appointment is illusory, and not real. Civil Code, § 3023; *Barclay* v. *Hopkins,* 59 *Ga.* 562; *Holman* v. *Ga. R. Co.,* 67 *Ga.* 595."

*Judgment reversed.*