## JOHNSTON-CREWS COMPANY v. SMITH.

1. The Court of Appeals did not err in the following ruling: "Where a new trial is sought on the ground that a member of the jury trying the case was related within the prohibited degree to the prevailing party, and upon the hearing affidavits are introduced tending to establish the sufficiency of that ground, and counter-affidavits are introduced to the effect that no such relationship existed, the judge passing upon the motion is the trior of the fact in controversy, and this court will not interfere with his decision thereon. *Buchanan* v. *State,* 118 *Ga.* 751 (9) (45 S. E. 607)."

2. The Court of Appeals did not err in the following ruling: "The excerpt from the charge complained of is not subject to any of the criticisms urged against it. The evidence was in sharp conflict, one part thereof tending to establish the truth of the plaintiff's petition, the other to establish the truth of the defendant's plea; and the verdict thereon, having the approval of the trial judge, can not be disturbed by this court."

3. The verdict was supported by evidence, and the Court of Appeals did not err in affirming the judgment on writ of error.

No. 4691. DECEMBER 17, 1925.

Certiorari; from Court of Appeals. 33 *Ga. App.* 25.

*Parker & Parker* and *J. H. Quarterman,* for plaintiff.

*E. D. Rivers,* for defendant.

GILBERT, J. Johnston-Crews Company brought suit against Smith, on open account. In his answer Smith set up that he had never purchased anything from the plaintiff; that his only dealings with the plaintiff had been as its agent; that he had never received from the plaintiff any goods except upon consignment;

Appeal and Error, 4 C. J. pp. 866, n. 51; 906, n. 42.
Sales, 35 Cyc. p. 573, n. 76.

and that all goods so received and sold had been accounted for. The jury returned a verdict in favor of the defendant. The motion for new trial made by the plaintiff was overruled. This judgment was affirmed by the Court of Appeals. The case is here on writ of error to the Court of Appeals. Besides the general grounds, the basis of the motion for new trial, as amended, are: (1) That H. G. Studstill, one of the jurors who tried the case, is related within the ninth degree to Smith, the defendant, and to J. B. Strickland, who had become surety on a bond given by Smith for the purpose of dissolving a garnishment issued in the cause. (2) That the court erred in charging the jury: "A principal is bound by all the acts of his agent within the scope of his authority; if the agent exceeds his authority, the principal can not ratify in part and repudiate in part; he must adopt either the whole or none. In that connection if Mr. Hunt, representing Johnston-Crews Co., had no authority to make the consignment, if you find there was one, but went on and sold the goods and did make an assignment, then the principal, Johnston-Crews Co., when informed of the fact, and had knowledge of such consignment, they must repudiate the entire consignment, or they must accept it." These grounds also form the basis of the petition for certiorari. As to the first, the contention of petitioner for certiorari seems to be that the record as made on appeal to the Court of Appeals did not include affidavits introduced by the defendant below in making his counter-showing upon the question of the disqualification of the juror on the hearing of the motion for new trial; in other words, that the ruling of the Court of Appeals upon this point should be reversed, because the affidavits constituting the counter-showing made by the defendant were not legally a part of the record in the Court of Appeals. The bill of exceptions sued out by the plaintiff below to the Court of Appeals specified as material to an understanding of the errors complained of "the motion for new trial, . . the amendment to the motion for new trial, . . the brief of evidence." The Court of Appeals, by order, required the clerk of the court below to send up "a properly certified copy of the counter-showing to the amended motion for new trial."

As to the second ground, the contentions of the petitioner for certiorari are that the charge given was erroneous, because (a) it involved the question of ratification of the unauthorized act of an

agent, when there was no evidence of ratification, or knowledge, or anything imputing knowledge to the plaintiff, so as to bind it by the doctrine of ratification; (b) said charge expressed an opinion to the effect that the plaintiff had been informed of a consignment and was bound to repudiate or accept it, when the evidence failed to show any such information to the plaintiff, but on the contrary showed clearly that the plaintiff was never advised of any claim of consignment until the plea of the defendant was filed; (c) a person dealing with a special agent takes the risk as to any extension of the agent's authority, and has the burden of showing authority from the principal for any acts of the agent other than such usual and ordinary acts as are reasonably necessary in the due performance of the particular purpose of the agency; (d) said charge is not applicable to the issue involved, was confusing to the jury, and was harmful to plaintiff. In addition to the above, the petition for certiorari assigns error on the judgment of the Court of Appeals, because "the effect of the decision is to hold that a person dealing with a special agent of limited authority can bind the agent's principal in unauthorized acts of the agent. While the decision of the Court of Appeals says nothing about the general grounds of the motion for new trial, it holds in effect what has just been stated, because this point was raised in the record, and properly so under the record, although not expressly referred to in the decision of the Court of Appeals." It is also contended that the Court of Appeals erred in holding that the evidence was sufficient to sustain the verdict for the defendant on his plea of consignment, for the reason that there was no contract naming the defendant agent or factor of the plaintiff. There was nothing about the character of the goods to indicate that they were to be sold on consignment or by an agent or factor, and their character was such that no contract of consignment could have reasonably been made with respect to them. Upon orders sold to the defendant on seven different dates amounting in the aggregate to $5424.95, he made four payments of $500 each, and one payment of $650, without at any time claiming consignment. From the time of shipment the plaintiff had no dominion or control over the goods, and the defendant did have complete dominion, custody, and control of them. The defendant was not required to and did not render any account of sales, both parties having treated the transaction as a straight

sale. The defendant admitted that he never claimed consignment and that plaintiff was never advised that the transaction was a consignment until after suit was filed. The defendant was not required to furnish plaintiff with the names of parties to whom he sold goods, or particulars as to the manner of sales by him; was not restricted in any sense in the selling of the goods, could sell for cash or on credit as he might see fit, and was not required to furnish plaintiff with any evidence of indebtedness or terms of credit extended. The payments of defendant to plaintiff were not conditioned, regulated, or restricted by his sales of the goods; every invoice bore its terms, and none of these had relation in any way to the time in which defendant might sell the goods.

On the trial of the case all of the evidence for the plaintiff was unqualifiedly to the effect that the goods shipped by Johnston-Crews Company to Smith were on contract of sale; that the contract was such as is usual in the case of a wholesale merchant selling to a retail merchant on time. The traveling salesman who exclusively dealt with the defendant in making the sale for the plaintiff testified unqualifiedly that the goods were shipped on straight order and charged to the account of the defendant, and that said salesman "never did any time sell Mr. Smith for Johnston-Crews Company any goods on consignment;" that the orders were taken by the salesman from February 10, 1920, to August 18, 1920. The goods were shipped on orders signed by the traveling salesman, and such orders were not signed by the defendant. The defendant, from time to time, paid the plaintiff several sums by check, amounting in the aggregate to $2650, leaving a balance due of $2774.95 and interest. The defendant Smith, testifying in his own behalf, admitted the receipt of all of the goods charged to him, and further testified that the traveling salesman of the plaintiff came to his place of business and talked with him about the goods, but that he did not buy any goods, that the traveling salesman said to him "I will tell you what I'll do. If you will let me have charge of your store, I will go through and see what you need and ship it out; and if you can't sell what I ship you, I will take it off your hands. That is the kind of trade I made with John Gaskins over there at Willacoochee, and I have already shipped them out to him, and that is what I will do with you." The defendant further testified that he told the salesman that he had all

of the goods that he needed, and "I told Mr. Hunt [the salesman] at that time that I wouldn't pay for that stuff. . . I had bought everything I wanted and that I could pay for, and he said, 'I want to ship you this time; and if you can not sell it, you need not pay for it; you sell what you can and pay for it when you sell it, and what you don't sell you can return it and I will take it back off your hands.' That is the way he sold it to me. He said, 'I will ship it out to you, and if you can not sell it for me I will take it off your hands and return it.' . . He didn't say a word about consignment to me; he shipped it out there for me to sell; . . that is what he told me. When the goods came I sold some of them and tried to keep them paid for as I sold them. I tried to keep everything paid up. I kept a record of what I sold of this stuff, separate from my other stuff. I might not have kept a separate sheet, but I knew where every bit of it was. I kept the Johnston-Crews stuff right in the shelves where I knew it, and kept up with all I sold. . . Most of his stuff was in the boxes they came therein." The defendant further testified that in another conversation he informed the salesman that he had a lot of goods that he could not use, and wanted the salesman to take them off his hands, and the salesman replied, "I will see the house, and I think we can arrange to take it off your hands if you can not use it." He further testified that when he sold five hundred dollars worth of the goods he paid plaintiff $500, and tried to keep even with the latter the best he could. Defendant admitted that he never did write the plaintiff that he did not buy the goods, but that he made his contention to the traveling salesman; that he never did write plaintiff that he wanted to return any of the goods, but that he told the traveling salesman with whom he had dealt; that in another conversation with the salesman he told him he could not sell the goods, and that some of them had never been opened, and that he, the defendant, would carry them back to the railroad and ship them back; and the salesman replied "I can't do business that way; that is not good business; . . we don't want the goods," and offered to close the matter up if the defendant would execute five notes, but the defendant declined to do so; also saying to the salesman, "I told him then that I just could not use the goods; they are down there and you can have them, just as you said they are yours, and he said 'that he would write

about them, but that they would not consider taking them back; we don't consider that we have lost anything, and we will just have to let you pay for the goods,' and I told him that I would not have that."

Prior to the filing of the suit the store and its contents were burned.

1. The first headnote does not require elaboration.

2. Error is assigned on the following charge of the court: "A principal is bound by all the acts of his agent within the scope of his authority; if the agent exceeds his authority, the principal can not ratify in part and repudiate in part; he must adopt either the whole or none. In that connection, if Mr. Hunt representing Johnston-Crews Company had no authority to make the consignment, if you find there was one, but went on and sold the goods and did make an assignment, then the principal, Johnston-Crews Co., when informed of the fact, and had knowledge. of such consignment, they must repudiate the entire consignment, or they must accept it." The criticisms are: (a) "said charge was not applicable to the issues and the evidence in the case, and tended to confuse the jury." (b) "the evidence did not show that the agent of the plaintiff had authority to sell on consignment, and there was no question of ratification involved." (c) "Said charge expressed an opinion that Johnston-Crews Co. was informed that the goods had been sold on consignment, and had knowledge of such sale; the evidence showing conclusively that the plaintiff was never informed by the defendant or any one else that the goods were sold on consignment, and had no knowledge of such claim by the defendant until after the filing of the suit." The Court of Appeals did not err in the following ruling, on the above-stated ground: "The excerpt from the charge complained of is not subject to any of the criticisms urged against it. The evidence was in sharp conflict, one part thereof tending to establish the truth of the plaintiff's petition, the other to establish the truth of the defendant's plea; and the verdict thereon, having the approval of the trial judge, can not be disturbed by this court." As shown by the facts herewith reported, the evidence was in conflict on the controlling issue between the parties; that is, whether there was a straight sale of goods by the plaintiff to the defendant on account, or whether the plaintiff shipped the goods to the defendant on an

agreement to the effect that the defendant should pay only for the goods sold, and that goods unsold would be taken back by the plaintiff. The contract, which was in parol, between the traveling salesman of the plaintiff and the defendant, is not easily classified if the defendant's version is accepted. However, by whatever name it may be called, it is clear that the evidence of the defendant tended to show that the understanding and intention of the parties was that the latter should only pay for such goods as he sold, and that the plaintiff would take back the goods unsold. Accordingly the court was authorized to give in charge the excerpt quoted in the second headnote, although the plaintiff's evidence on the contrary showed a contract of sale.

"The absence of a limitation on the price at which goods may be sold by a consignee who has to account to his consignor at a fixed price will not transform an agreement made in good faith, and clearly intended by both parties to be one of agency, into a contract of sale. Where by the terms of the contract the owner or consignor retains the right to demand the return of the property at any time without default on the part of the person to whom it is delivered, the transaction is properly one of bailment or agency, and not of sale. The fact that goods are billed to a party as though a sale had been made is of more or less persuasive force, although not conclusive, that the transaction was a sale and not a bailment. The contract may be one of agency, although the agent is to find his compensation in the discount allowed him by the principal from the usual price, or in the advance he may be able to secure from third persons above the principal's price to him; or, it would seem, even though the contract provides no compensation at all for the agent." 6 C. J. 1094. Compare *National Bank* v. *Goodyear,* 90 *Ga.* 711, 726 (16 S. E. 962). "The distinction between agency contracts creating bailments and contracts of sale is not always clear, and borderland cases are frequently encountered the decisions in which are not easily reconcilable. It is of course well settled that in a sale title passes to the buyer, while in an agency title remains in the principal, although possession is transferred to the agent." 6 C. J. 1091; McGaw *v.* Hanway, 120 Md. 197 (87 Atl. 666, Ann. Cas. 1915A, 601). In the note to the McGaw case a number of authorities are cited to sustain the principle just announced. In one of them, Ex parte White, L. R.

6 Ch. (Eng.) 397, it was said: "If the consignee is at liberty, according to the contracts between him and his consignor, to sell at any price he likes, and receive payment at any time he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time,—in my opinion, whatever the parties may think, their relation is not that of principal and agent. The contract of sale which the alleged agent makes with his purchasers is not a contract made on account of his principal, for he is to pay a price which may be different, and at a time which may be different, from those fixed by the contract. He is not guaranteeing the performance, by the persons to whom he sells, of their contract with him, which is the proper business of a del credere agent; but he is to undertake to pay a certain fixed price for those goods, at a certain fixed time, to his principal, wholly independent of what the contract may be which he makes with the persons to whom he sells; and my opinion is that, in point of law, the alleged agent in such a case is making, on his own account, a contract of purchase with his alleged principal and is again reselling." Considering the distinctive features, both of a contract of sale and of consignment or the creation of an agency to sell, as applied to the facts of this case, we find that under the evidence of the defendant, which the jury was authorized to accept, it was the understanding, first, that none of the goods were to be paid for unless sold; second, that such of the goods were to be returned to the plaintiff as remained unsold; and it is a necessary deduction from this that no specific time for the payment was fixed. We say this is necessary, because, until the goods were sold, the obligation to pay did not arise, and manifestly this made the time of payment uncertain. Under the evidence of the defendant nothing was said expressly on the subject of title. According to facts stated by the defendant, the title remained in the plaintiff. The defendant testified that the word "consignment" was not used. This does not necessarily alter or affect the character of the contract. The intention and meaning of the parties, as gathered from the evidence, control in that respect, and not the name which may have been used. *Snelling* v. *Arbuckle,* 104 *Ga.* 362, 365, 366 (30 S. E. 863).

The court, in that part of the charge of which complaint is made, used the word "consignment." A "consignee," as usually

defined in the dictionaries, is "one to whom something is consigned or shipped." A consignment, therefore, would be something consigned or shipped. Using the word in this general and ordinary sense, therefore, it could very appropriately be intended to mean "something shipped," as a bill of goods shipped by a merchant to an individual or by a wholesale merchant to a retail merchant, etc. The fact that the court used the word "consignment" was not injurious to the plaintiff, even though the contract was not technically one of consignment. It may be insisted that, although the defendant swore that under the contract the plaintiff agreed to take back the unsold goods, in fact such goods were not actually returned to the plaintiff. The defendant swears that he tendered the goods, much of them still being in the original packages, to the traveling salesman of the plaintiff, offering to deliver them to the railroad company for shipment to the plaintiff, and that the salesman declined. We think this amounts to a tender and a refusal, and accordingly that the defendant was not obligated to go further with the effort to return the goods. Whatever obscurity there may be about the contract as sworn to by the defendant, one distinctive fact is clear, that under that contract the defendant was not to pay for the goods not sold by him. The court properly submitted that contention to the jury for determination as a disputed fact. The jury evidently believed that this was the truth of the issue. The verdict was supported by evidence. The plaintiff in error relies upon the case of *Snelling* v. *Arbuckle,* supra. That case differs in its facts from the present case, and is not in conflict with the ruling here made. In the opinion it was said in that case that under the contract the person receiving the goods, although he sold none of them, was just as much obliged to pay for them at a price fixed by the consignor at the time of the consignment as he would have been if he had in fact sold all of the goods contained in the consignment. Therefore the contract in that case was held to be one of sale, although called a consignment. It was so explained in *Holleman* v. *Bradley Fertilizer Co.,* 106 *Ga.* 156 (32 S. E. 83). It is insisted that the traveling salesman was a special agent, and had no authority to make a contract with the defendant, as contended by the latter, to ship the goods to be paid for only when sold, and that there is nothing in the evidence to indicate that the defendant or any one

else ever conveyed notice or knowledge of such a contract to the plaintiff. If the traveling salesman was a special agent unauthorized to make such a contract, that would not alter the fact, if the defendant's evidence is true, that the latter did not make a contract of outright purchase and sale. There is no evidence on the other hand that the defendant had notice of such limited agency. According to the defendant's evidence the goods were actually shipped in accordance with the contract made by him. From this he would be authorized to conclude that the agent had the requisite authority, and that the goods were shipped in accordance with such contract.

Moreover, if the traveling salesman was without authority to make the contract as contended for by the defendant, this alone would not, as a matter of law, bind the defendant to accept the goods on the basis of an outright sale, and thus to be bound by a contract to which he did not assent. So, in this instance the question at last is one for the determination of the jury on the evidence submitted, and it appears that the jury accepted the evidence of the defendant, which negatives the contention that he entered into a contract of sale. In Hopkins v. Armour, 8 Ga. App. 442, 444 (69 S. E. 580), that court was dealing with a case very similar in some respects. It involved the question of principal and agent, and the authority of the latter in the sale of goods, and the duty devolving upon the buyer in respect to such authority. Judge Russell, speaking for the court, said: "It would never do to hold that one could not appoint an agent with authority to sell goods, without the necessity of having the bargain confirmed, even though the latter method of sale is the more usual. It is apparent that the defendant in the present case was of the opinion that the salesman had authority to sell. He could have bought the lard compound from another salesman who was at the time in his store, endeavoring to sell to him, if Armour & Co.'s salesman had not induced him to buy from them. To say that in no case could a merchant authorize his salesman to make a binding trade in his behalf would paralyze business, because the buyer would never know whether he could rely upon having the goods he contracted for shipped or not, and, therefore, know that his stock would be seasonably replenished. According to the testimony of Mr. Hopkins, the inference that Mr. Snow had authority to bind Armour & Co. by

the proposal which Hopkins accepted is authorized; and it was for the jury to say whether they would prefer Hopkins's testimony or that of the witness for the plaintiff." The charge of the court contained correct abstract principles of law in regard to ratification of the acts of an agent. This is true although there was no evidence to show that the principal had no knowledge of the terms of the contract made by the agent with the defendant. The defendant, a retail merchant, dealing with the traveling salesman of a wholesale mercantile company in the customary and usual course of business of such salesman, was not required to ascertain from the principal whether the salesman was authorized to enter into the contract such as was claimed by the defendant in this case. Consequently, after the goods had been shipped to the defendant under the contract claimed by the defendant and which the jury were authorized to find was the true contract, and after the defendant had made payments to the plaintiff, the plaintiff will be held to have ratified the contract, and it will not be necessary for the defendant to show actual knowledge on the part of the plaintiff of the terms of the contract.

3. The third headnote does not require elaboration.

*Judgment affirmed. All the Justices concur.*